IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SAMUEL WHITE,

      Petitioner,

v.                                                                      CASE NO. 1:12-cv-208-MP-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1.)  Respondent filed a response and an appendix with relevant portions of the state-court record.  (Doc. 12.)  Petitioner has filed a reply. (Doc. 14.)  Upon due consideration of the Petition, the Response, the Reply, and the state-court record, the undersigned recommends that the Petition be denied.[1]

## I. Summary of State Court Proceedings

Petitioner was sentenced on August 7, 2007, to life in prison after being found guilty at a jury trial of one count of first-degree murder of his wife, Denise White. (Doc. 12-4 at 178.)  At trial, the State presented physical evidence (the knife used, the clothing of Petitioner and witnesses); documentary evidence (photos of the crime scene, Petitioner's statements); and the testimony of thirteen witnesses (including several of the victim's coworkers, a friend of the Defendant, police officers, a paramedic, and an expert in forensic pathology). (Docs. 12-3, 12-4.)

---

[1]Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

At trial, Petitioner's co-worker Harriet Romans testified that on October 27, 2004, Petitioner called in sick to work at about 5:00 a.m. (Doc. 12-3 at 217-220.)  Emily Crosby, a receptionist, testified that around 10 a.m., he arrived at Santa Fe Community College, where his wife, Denise White, worked.  (Doc. 12-3 at 144.)   She testified that she directed Petitioner to Denise's office.  *Id.*   Shortly after, she heard a "horrific scream." (Doc. 12-3 at 144.)  Bruce Van Nostrand testified that he ran towards the sound, which was coming from Denise's office.  (Doc. 12-3 at 70.)  He opened the door and saw Petitioner standing over Denise. *Id.*  Van Nostrand testified that Petitioner turned towards him with a bloody knife in his hand and walked out of Denise's office. (Doc. 12-3 at 71.)  Allen Cramer, the victim's co-worker, testified that he attempted to stop Petitioner, but Petitioner evaded him and escaped in his car. (Doc. 12-3 at 126-128.)

Gail Foote, a paramedic, testified that Denise White was dead by the time the paramedics arrived at Santa Fe College. (Doc. 12-3 at 207-215.)  Police apprehended Petitioner the next day in New Kent County, Virginia, and took him into custody. (Doc. 12-3 at 167-170.)  Before trial, Petitioner filed a motion to suppress the statements he made to police after his arrest, which was denied by the trial court.  (Doc. 12-5 at 166-259.)  The jury found Petitioner guilty of first degree murder on July 25, 2007.  (Doc. 12-4 at 164.)  The trial court sentenced him to life imprisonment. (Doc. 12-4 at 178.)

Petitioner appealed his conviction to the Florida First District Court of Appeal. The only issue raised on direct appeal was whether the trial court erred in denying Petitioner's motion to suppress his statements to police. (Doc. 12-7 at 2-45.)  The court affirmed, *per curiam*, the conviction and sentence on March 30, 2009. (Doc. 12-7 at 91.)

Following his conviction, Petitioner pursued multiple post-conviction remedies. Petitioner filed a Motion to Correct Illegal Sentence Pursuant to Rule 3.800(a) on October 13, 2009, which was dismissed on November 2, 2009. (Doc. 12-7 at 126-160.) Petitioner appealed the dismissal, but later voluntarily dismissed the appeal. (Doc. 12-7 at 248-259.)

On April 8, 2010, Petitioner filed a *pro se* Motion for Post-Conviction Relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. He raised 16 grounds:

(1) Trial counsel was ineffective for failing to investigate and failing to move to suppress illegally obtained evidence;

(2) Trial counsel was ineffective for failing to object when a State witness commented on Defendant's invocation of his right to remain silent and request for counsel;

(3) Trial counsel was ineffective for failing to object to court's failure to answer jury's question about the jury instructions;

(4) Trial counsel was ineffective for failing to object and move for a mistrial based on the prosecutor's demonstration to the jury and inflammatory comments;

(5) Trial counsel was ineffective for failing to call an expert defense witness;

(6) Trial counsel was ineffective for failing to object to hearsay testimony by State witness Ryan Kitchens;

(7) Trial counsel was ineffective for failing to depose State witness Ryan Kitchens;

(8) The State violated Defendant's rights to due process by failing to reclassify the offense of first-degree murder down to second-degree murder based on the

grand jury's findings and the lack of aggravating factors;

(9) Trial counsel was ineffective for failing to object to the in-court identification of Defendant by State witness Bruce Van Nostrand;

(10) Defendant was denied due process when he was not allowed to confer with counsel;

(11) Defendant was denied due process when he was not advised of the limits on his restraint;

(12) Defendant was denied due process when he was denied opportunity to seek redress concerning his detainment;

(13) Trial counsel was ineffective for failing to object when the trial court gave erroneous jury instructions on the necessarily lesser-included offense of manslaughter;

(14) Trial counsel was ineffective for failing to move for a Frye hearing on the testing done by Dr. Martin Tracey;

(15) The State knowingly used perjured testimony at trial to convict Defendant; and

(16) The State committed a *Brady* violation by failing to disclose exculpatory evidence.

(Doc. 12-8 at 1-45, 175-177; Doc. 12-7 at 299-310.)

Petitioner's Rule 3.850 motion was summarily denied without an evidentiary hearing on October 12, 2011. (Doc. 12-7 at 299-310; Doc. 12-8 at 1-187.)  Petitioner appealed the denial, only raising grounds (1), (5), (10), (11), and (12) on appeal.  (Doc. 12-10 at 83-97.)  The First DCA affirmed *per curiam* and mandate issued on May 8,

2012. (Doc. 12-10 at 103-105.)

Petitioner filed a Petition Alleging Ineffective Assistance of Appellate Counsel on June 6, 2012, alleging that appellate counsel was ineffective (1) for not raising the issue on direct appeal that Petitioner was denied his substantive due process rights to have counsel and access to the courts; and (2) for not arguing the "under color of office" doctrine as related to the denial of his motion to suppress.  (Doc. 12-10 at 109-133.) The First DCA denied the petition as untimely on June 27, 2012.  (Doc. 12-10 at 109-168.)

Petitioner filed the instant petition for federal habeas relief on September 13, 2012.  (Doc. 1.)  He asserts eleven grounds for relief in the petition: (1) The State used evidence obtained in violation of the Fourth Amendment; (2) Petitioner was not brought in front of a magistrate within 24 hours in violation of Fla. R. Crim. P. 3.130, which violated his right to counsel; (3) the State elicited comments from the state's witness that the Petitioner invoked his right to remain silent and his request for a lawyer; (4) defense counsel was ineffective for failing to call an expert witness, Dr. Hauswirth, to testify regarding the DNA evidence; (5) the trial court failed to provide a clarification of the jury instructions upon request in violation of Petitioner's due process rights; (6) the prosecutor made remarks in the closing argument that violated Petitioner's constitutional right to a fair trial; (7) trial counsel was ineffective for failing to depose state witness Ryan Kitchens; (8) the State violated Petitioner's constitutional rights by using perjured testimony of Bruce Van Nostrand; (9) Petitioner's appellate counsel on direct appeal was constitutionally ineffective for failing to raise two issues; (10) the State violated Petitioner's due process rights by not proving the aggravating factor requirement of cold,

calculated, premeditation as it relates to first degree murder; and (11) Petitioner's constitutional rights were violated because of the cumulative effect of errors.

## II.  Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted.  *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).  Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered.  *Id*.  at 1302, 1306.

### III.  Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), the petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011); see § 2254(e) (1).  "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow,* 134 S. Ct. 10*,* 15 (2013)(quoting  *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions

demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them.") *See also Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue.)

"Under § 2254(d)(1)'s 'contrary to' clause, we grant relief only 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.' " *Jones v. GDCP Warden*, 753 F.3d 1171, 1182 (11th Cir. 2014) (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)).  For § 2254(d)(1), clearly established federal law includes only the holdings, not the dicta of Supreme Court decisions. *White v. Woodall*, ___ U.S. ___, 134 S.Ct. 1697, 1702 (2014).  "Under § 2254(d)(1)'s 'unreasonable application' clause, we grant relief only 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.' " *Jones*, 753 F.3d at 1182 (alteration in original) (quoting *Williams*, 529 U.S. at 413).  The Supreme Court has interpreted § 2254(d) as requiring that, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 104 (2011).  "[A]n 'unreasonable application' of [Supreme Court] holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice."

*Woodall*, 134 S.Ct. at 1702.  In other words, Petitioner must establish that no fairminded jurist would have reached the Florida court's conclusion.  *See Richter*, 562 U.S. at 104; *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257–58 (11th Cir.2012).  "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 104.

In light of *Gill,* the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id*. at 1292.  A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable."  *Gill*, 133 F.3d at 1290.

### IV.  Ineffective Assistance of Counsel

Because Petitioner's claim alleges ineffective assistance, a review of the applicable law is necessary.  Under *Strickland v. Washington*, 466 U.S. 668, 677-78 (1984), to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686.  The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong.  *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).  "The

relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).  There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001).  "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc).  "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id.*

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on.  The lawyer's strategy was course A.  And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id.*

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.  Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id.*

When, as here, the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is

a difficult one. *Harrington,* 562 U.S. at 104. The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court.  28 U.S.C. § 2254(d)(1).  As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at 101 (quotation marks omitted).  And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*.  So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied.  *Id*.  Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted.  *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id*. at 105.  When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.  Double deference is doubly difficult for a

petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

## Discussion

### *Ground 1: The State used evidence obtained in violation of the Fourth Amendment*

Petitioner's first claim is that the State used evidence at trial – his clothes, his car, and his taped statement to police – seized in violation of the Fourth Amendment by police officers acting outside of their jurisdiction.  On direct appeal, Petitioner raised the issue that the trial court erred by denying his motion to suppress his statement, but he did not raise the issue that his clothes and car were seized in violation of the Fourth Amendment.  In his Rule 3.850 motion, Petitioner argued that his trial counsel was ineffective for failing to investigate and failing to move to suppress the illegally obtained evidence, which the trial court denied.

With respect to Petitioner's claim that the State illegally obtained his clothes and car, Petitioner failed to raise the claim on either direct appeal or during collateral review. The claim has not been fairly presented through one complete round of state court review, so it is procedurally defaulted.  *Bailey*, 172 F.3d at 1303. Moreover, Petitioner has not demonstrated cause and prejudice for the default or a miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Accordingly, because the claim is procedurally defaulted, the Court cannot grant relief on this basis.

Even if this claim had been exhausted, however, it still would not constitute a

cognizable claim for habeas relief.[2]  Fourth Amendment claims are barred from federal habeas corpus review if the issue has an opportunity for full and fair litigation in state court.  *Stone v. Powell*, 428 U.S. 465 (1976); *Agee v. White*, 809 F.2d 1487 (11th Cir. 1987).  An "opportunity for full and fair litigation" means that the state merely must provide the processes for a defendant to obtain full and fair litigation of a Fourth Amendment claim – not that the defendant actually takes advantage of the processes. *Caver v. State of Ala.*, 577 F.2d 1188, 1192 (5th Cir. 1978).  "Full and fair" includes an evidentiary hearing in a trial court and at least the availability of meaningful appellate review when facts are disputed, and when the facts are undisputed, "full and fair consideration" is satisfied when the state appellate court gives full consideration to the claim.  *Tukes v. Dugger*, 911 F.2d 508, 513-14 (11th Cir. 1990).

Florida courts have in place procedures for defendants to litigate Fourth Amendment claims.  *See* Fla. R. Crim. P. 3.190(g).  Petitioner was afforded the opportunity to litigate this claim in state court, although he chose not to.  Because Petitioner has had a "full and fair opportunity" to litigate his Fourth Amendment claim, this claim is barred from review in this Court.

With respect to Petitioner's claim that the State illegally used his taped statement, this claim is subject to Fifth Amendment analysis.  The taped statement, which was played at trial, consisted of Petitioner's interview with Detective Barr after his arrest. (Doc. 12-3 at 257.)  Before trial, Petitioner filed a motion to suppress his statements to

---

[2] Pursuant to 28 U.S.C. § 2254(b)(2), a habeas petition may be denied on the merits, notwithstanding Petitioner's failure to exhaust state court remedies.

police on the grounds that the statements were obtained in violation of the Fifth Amendment.  (Doc. 12-5 at 166-259.)

Federal law dictates that once a defendant expresses a desire for counsel, the authorities may not interrogate defendant until counsel has been made available to him. *Edwards v. Arizona*, 451 U.S. 477 (1981); *Minnick v. Mississippi*, 498 U.S. 146, 149-151 (1990).  However, if the defendant initiates further communication with the police after invoking his right to an attorney, or if counsel is provided for the defendant, then interrogation may continue.  *Edwards*, 451 U.S. at 484-485.

During a hearing on Petitioner's motion to suppress the state court addressed whether or not the statements made by Petitioner were admissible at trial.  (Doc. 12-5 at 166-259.) The court heard testimony from both Petitioner and Detective Barr regarding the initiation of both of Petitioner's police interviews.  *Id.* at 173-238.  The court also heard the portion of the taped statement where Detective Barr read Petitioner his rights, had Petitioner sign a waiver of rights form, and had Petitioner express that he voluntarily contacted the police. *Id.* at 215-219.  The court found that the statement was not taken in violation of Petitioner's Fifth Amendment rights because Petitioner reinitiated contact with the police after his request for an attorney. *Id.* at 239-242. Accordingly, on this record, Petitioner has failed to show that the state court's rejection of this Fifth Amendment claim was contrary to, or an unreasonable application of, federal law.

To the extent that Petitioner's argument could be construed as a claim that trial counsel was ineffective for failing to investigate and failing to move to suppress the illegally obtained evidence, the state court reviewed this claim in his postconviction

motion, stating:

> "As to ground (A), Defendant alleges that trial counsel was ineffective for failing to investigate and for failing to move to suppress illegally obtained evidence. According to Defendant, he was unlawfully detained in Virginia for this case prior to being transported back to Gainesville.  However, the record reflects that a warrant for his arrest was entered in this case on October 27, 2004, the day before his arrest in Virginia.  Defendant's vehicle and clothing were seized as a result of that arrest on the outstanding Alachua County warrant.  After his arrest, Defendant was held in Virginia awaiting extradition back to Gainesville.  Because the arrest, and resulting search and seizure, in this case was based upon a lawfully issued warrant, counsel did not err by failing to suppress the evidence on this basis.
>
> In addition, counsel did file a motion to suppress Defendant's statements to law enforcement in this case. The motion was denied.  Thus, Defendant's claim that counsel did not move to suppress his statements is without merit."

(Doc. 12-8 at 177-78.)(internal citations omitted).

The claim that trial counsel was ineffective for "failing to investigate and failing to move to suppress the illegally obtained evidence" is meritless. The state court determined that in contrast to Petitioner's contention that he was unlawfully detained in Virginia, a warrant was issued for his arrest and his vehicle and clothing were seized pursuant to that warrant.  The state court concluded that because his arrest, and the resulting search and seizure, were based on a lawfully issued warrant, counsel did not err by failing to suppress the evidence.  The state court also pointed out that counsel did file a motion to suppress Petitioner's statements to police, which was denied. Accordingly, on this record, Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of *Strickland*.

**Ground 2: Petitioner's argument that his right to counsel was violated because he was not brought in front of a magistrate within 24 hours as required by Fla. R. Crim. P. 3.130 is an issue of state law not cognizable on federal habeas review.**

Petitioner's second claim is that he was not taken before a judicial officer within 24 hours of arrest,  in violation of Fla. R. Crim. P. 3.130.  He argues that the delay denied him the right to acquire and confer with counsel.  As a preliminary matter, the claim is procedurally defaulted – Petitioner failed to raise it on direct appeal or on collateral review.  *Bailey*, 172 F.3d at 1303.  Petitioner has failed to show cause and prejudice for the default, so federal habeas relief is due to be denied.

Moreover, Petitioner's claim would still fail after review. Petitioner's argument is that the failure to bring him in front of a magistrate within 24 hours of his arrest violates Fla. R. Crim. P. 3.130, and the delay violated his right to counsel.  Although Petitioner attempts to couch this claim in constitutional terms, he is actually asserting a ground that involves a state court's interpretation and application of Florida law.  *See, e.g., Branan v. Booth,* 861 F. 2d 1507, 1508 (11th Cir. 1988) ("Although petitioner alleges violations of federal law, it is clear that this petition is based exclusively on state law issues which were merely 'couched in terms of equal protection and due process.'") (citing *Willeford v. Estelle,* 538 F. 2d 1194, 1196-98 (5th Cir. 1976)).  An issue of state law is not cognizable in a federal habeas action.  *See id.*, 28 U.S.C. § 2254(a).  As such, Petitioner cannot show that this claim provides a basis for federal habeas relief.

**Ground 3: The State did not improperly elicit comments from a witness that the Petitioner invoked his right to remain silent and his request for a lawyer.**

Petitioner argues that the prosecutor and defense counsel improperly elicited

comments from state witness Detective Barr concerning whether Petitioner invoked his right to remain silent and requested an attorney.  Respondent asserts that this specific claim was never presented to the state courts. Rather, Petitioner presented a claim in state court of ineffective assistance of counsel because counsel failed to object when a State witness commented on his request for an attorney. Thus, the claim is unexhausted and procedurally defaulted.

Even if this claim were exhausted, it provides no basis for federal habeas relief. Petitioner challenges two exchanges, the first between the prosecutor and witness Detective Barr, and the second between defense counsel and Detective Barr.  The first exchange is as follows:

> Q: And there's a section entitled "waiver." Explain to the jury – when you got to the section about waiving the rights on November 1st, explain to the jury what transpired.
>
> A: Okay.  I had him read the waiver portion of this.  And at that point in time, Mr. White said, I want to talk to you.  I'd like to talk to you, but I think I need an attorney.  And I said, that is fine.  That's no problem whatsoever.  I respect that.  If that's what you want, then that's, you know, what we'll do...
>
> Q: The minute he had indicated a desire to have a lawyer, did you ever ask him any specific questions about Denise White's murder?

(Doc. 12-3 at 238-39.)  The second exchange Petitioner challenges, between his defense attorney and Detective Barr, is as follows:

> Q: Right.  Right.  Your hopes were that after invoking his constitutional rights to remain silent, that he would nonetheless contact you because you knew you couldn't go any further at this point correct?
>
> A: Okay...I had given him the option, if he wanted to call me, that he could.  Is it specifically because I knew all these things?  No sir, Mr. Stokes.

(Doc. 12-3 at 263.)  As a preliminary matter, the second exchange that Petitioner

challenges as an improper comment on his right to remain silent is an exchange
between defense counsel and Detective Barr.  When defense counsel evokes
comments on a defendant's silence, no constitutional violation occurs.  See *United
States v. Chastain*, 198 F.3d 1338, 1351 (11th Cir. 1999)(witness comments in response
to defense counsel are not manifestly intended to be a comment on defendant's right to
remain silent).  To the extent Petitioner intends to raise this as a claim for ineffective
assistance of counsel, he failed to raise it on either direct appeal or postconviction
review and it is unexhausted.

   As to the other exchange that Petitioner challenges, between the prosecutor and
Detective Barr, this argument is also without merit.  The exchange at issue involved
Detective Barr's comment that Petitioner asked for an attorney before speaking to him.
A prosecutor may not comment on a defendant's post arrest silence, and the same
protection extends to impeachment use of a defendant's post-Miranda invocation of the
right to counsel.  *See Doyle v. Ohio*, 426 U.S. 610 (1986); *Wainwright v. Greenfield*, 474
U.S. 284, 295 (1986).   However, any *Doyle* violation is subject to the harmless error
standard articulated by the Supreme Court in *Brecht v. Abrahamson*.  507 U.S. 619
(1993); *Hill v. Turpin*, 135 F.3d 1411, 1416 (11th Cir. 1998).  The harmless error
standard requires the Court to assess whether the error "had substantial and injurious
effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 623.  If it does
not, then habeas relief cannot be granted.  *Id.* at 637.

   The Eleventh Circuit repeatedly has held *Doyle* error harmless where the
violation consists of only a single improper reference to defendant's post-Miranda
silence or request for counsel during a trial at which the government's evidence was

otherwise overwhelming.  *Hill*, 135 F.3d at 1417; *United States v. Gabay*, 923 F.2d 1536,

1541 (11th Cir. 1991); *United States v. Ruz-Salazar*, 764 F.2d 1433, 1437 (11th Cir.

1985); *Sullivan v. Alabama*, 666 F.2d 478, 485 (11th Cir. 1982).  This case is no

different – in light of the overwhelming evidence presented by the state at trial, a single

*Doyle* violation would not constitute more than harmless error.  Accordingly, habeas

relief should be denied as to this ground.

     To the extent that Petitioner raises this claim as an example of ineffective

assistance of counsel, the state court addressed this claim in his Rule 3.850 motion. The

state court denied this ground and said:

> "As to ground (B), Defendant alleges that trial counsel was ineffective for
> failing to object when a State witness (Detective Matt Barr) commented on
> Defendant's invocation of his right to remain silent and his request for
> counsel.  The voluntariness of Defendant's confession to law enforcement
> was an issue at trial.  Because the voluntariness of Defendant's
> confession was an issue at trial, it was not improper for the State to
> inquire about it at trial.  Because it was not improper for the State to
> inquire about it, counsel did not err by failing to object.  Accordingly, this
> claim is without merit."

(Doc. 12-8 at 178.)(internal citations omitted).

     In light of the issue of the voluntariness discussed above, the state court applied

the performance prong of *Strickland* to conclude that counsel was not ineffective.

Petitioner has failed to show that the state court's rejection of this ineffective-assistance

claim on the performance prong of *Strickland* was contrary to, or an unreasonable

application of, federal law.

### Ground 4: Defense counsel was not ineffective for failing to call an expert witness, Dr. Hauswirth, to testify regarding the DNA evidence.

     Petitioner contends that trial counsel rendered ineffective assistance by failing to

call an expert, Dr. Hauswirth, to testify regarding the State's expert testimony on DNA.

Petitioner argues that Dr. Hauswirth's testimony could have been used for impeachment

and could have given the jury a "fair and more informed understanding of the evidence

presented and the opportunity to evaluate and weigh the testimony of different

conclusatory (sic) expert opinions." (Doc. 2 at 15.)

> In rejecting this claim on postconviction reivew, the state court found:

> "During opening statements, counsel told the jury that the defense might call Dr. Hauswirth to assist them in understanding the expert testimony about DNA.  However, despite this, there is no indication that the defense was disputing the findings of the State's DNA experts.

> Defendant contends that Dr. Hauswirth could have testified as to: why Defendant's fingerprints were not on the knife; the identify of the person whose DNA was found at the scene; and, why Defendant's DNA was found at the scene.  In fact, Dr. Hauswirth could not have testified to any of these facts.  First, Dr. Hauswirth is not a fingerprint expert.  Therefore, he could not have testified in that regard.  Second, the DNA profile found at the crime scene was insufficient to make a determination of the donor's identity.  Even if it was determined that the DNA belonged to someone other than Defendant, and that person was known and identified, the jury still heard the testimony of eyewitnesses who place Defendant at the crime scene murdering his wife with a knife and then fleeing.   Because Defendant fails to show either error or prejudice, this claim is without merit."

> (Doc. 12-8 at 180-181.)(internal citations omitted).

 As the state court pointed out, there is no indication that Dr. Hauswirth's

testimony was meant to dispute the findings of the State's DNA experts.  Even if that

had been the case, the failure to call Dr. Hauswirth caused no prejudice to the

Petitioner because the State relied on eyewitnesses to place Defendant at the crime

scene rather than DNA evidence. Accordingly, on this record, Petitioner has failed to

show that the state court's rejection of this claim on both the performance and prejudice

prongs of *Strickland* was contrary to, or an unreasonable application of, federal law.

### Ground 5: The trial court did not fail to provide a clarification of the jury instructions upon request in violation of Petitioner's due process rights.

Petitioner argues that the trial court failed to provide clarification on the jury instructions, which violated his due process rights.  During deliberation, the jury handed the judge a question asking for the definition of indifference as it pertained to second degree murder and demonstrating a depraved mind.  In response, the judge directed the jury to rely on the instructions as given.[3]

Both Petitioner's freestanding claim and any potential ineffective assistance of counsel claim are unexhausted.  Petitioner failed to raise his freestanding claim on both direct appeal and collateral review, so it is unexhausted and procedurally defaulted.  With respect to his claim of ineffective assistance of counsel, he raised the claim in his Rule 3.850 motion but failed to raise it in his appeal of his Rule 3.850 motion, and it is therefore unexhausted.  *Watson v. State*, 975 So. 2d 572, 573 (Fla. 1st DCA 2008) ("Traditionally, when a defendant submits a brief in an appeal from a summary denial of a postconviction motion, this Court may review only those arguments raised and fully addressed in the brief.")  The claim has been waived in front of the First District, so it is now procedurally defaulted.  *Id.*

---

[3]The portion of the jury instructions that the jurors requested clarification on are as follows:

"To prove the crime of second degree murder, the State must prove the following elements beyond a reasonable doubt.  One, Derother Denise White is dead.  Two, the death was caused by the criminal act of the defendant.  Three, there was an unlawful killing of Derother Denise White by an act imminently dangerous to another and demonstrating a depraved mind without regard for human life."  (Doc. 12-4 at 147-48.)

In addition to being procedurally defaulted, his claim for failing to clarify the jury instructions is meritless.  The Supreme Court has held that when a judge responds to a jury's question by directing its attention to the precise paragraph of the constitutionally adequate jury instruction that answers its inquiry and the jury asks no followup question, the presumption is that the jury understood the judge's answer and appropriately applied the instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  The Supreme Court stated that the Constitution requires nothing further.  *Id.*  Accordingly, the trial court's direction to the jury to rely on the instructions was proper, and the claim does not provide a basis for federal habeas relief.

To the extent that Petitioner raises this claim as one of ineffective assistance of counsel, the state court rejected this claim on postconviction review:

> "It was perfectly reasonable for the jury to be instructed to reread the written instructions that they had previously been given.  *See Kirkland v. State*, 557 So. 2d 130, 131 (Fla. 3d DCA 1990)(holding that trial court's decision to direct the jury to reread the written instructions in response to their question was not error).  Thus, it was not error for counsel to fail to object or propose a different answer.  Furthermore, Defendant fails to show any prejudice as a result of counsel's actions.  Accordingly, this claim is without merit."

As discussed above, a trial judge's instructions to the jury to read the jury instructions is proper, so counsel's failure to object was not error.  Petitioner also cannot show any prejudice by counsel's failure to object because he was convicted of first degree murder, and the portion of the instructions that the jury requested clarification on concerned second degree murder.   Petitioner has not shown an unreasonable application of *Strickland* and, therefore, this claim is due to be denied.

**Ground 6: The prosecutor's remarks in the closing argument did not violate Petitioner's constitutional right to a fair trial.**

Petitioner's sixth claim is that the prosecutor's reenactment of the crime and inflammatory and prejudicial remarks made during his closing argument violated his right to a fair trial. Petitioner did not raise this issue in his direct appeal or Rule 3.850 motion, so to the extent he brings this ground as a freestanding claim, it is unexhausted and procedurally defaulted.

Additionally, Petitioner's freestanding claim would not provide a basis for habeas relief. In some circumstances, improper jury argument by the prosecution may violate a defendant's constitutional right to a fair trial. *See, e.g., Cronnon v. State*, 587 F.2nd 246, 251 (5th Cir. 1978). The standard is: (1) whether the argument was improper; and (2) whether any improper argument was so prejudicial as to render the trial fundamentally unfair. *Davis v. Kemp*, 829 F.2d 1522, 1526 (11th Cir. 1987). Although Petitioner takes issue with the prosecutor's reenactment of the crime, a prosecutor is permitted to argue the evidence presented and suggest inferences that the jury might draw from it. *United States v. Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992); *Houston v. Estelle*, 569 F.2d 371, 380 (5th Cir. 1978). Suggesting the way that Petitioner committed the crime in light of the evidence presented was not an improper remark by the prosecutor.

Furthermore, although Petitioner argues that the words "scream" and "screaming" and the phrase "it goes deep" were an attempt to arouse the emotions of the jury, he has not shown that these remarks are so inflammatory or prejudicial that they endangered the basic fairness of the trial. *See Bryant v. Caldwell*, 484 F.2d 65

(5th Cir. 1973)(finding that a prosecutor's references to defendant's character and his appeal to the jury to convict for the safety of the community was not so inflammatory as to vitiate the basic fairness of the trial). The jury already had heard the remarks and phrases that Petitioner challenges through the testimony of witnesses. (Doc. 12-3 at 75, 144, 203.) The prosecutor simply repeating these words and phrases that were already used did nothing to endanger the fairness of the trial. Petitioner has not shown any improper remarks by the prosecutor, nor has he shown that the fundamental fairness of the trial was endangered and, therefore, this ground is due to be denied.

Liberally construing Petitioner's claim as one of ineffective assistance of counsel, the state court addressed this claim on postconviction review. In rejecting the claim, the state court found:

> "As to ground (D), Defendant alleges that trial counsel was ineffective for failing to object and move for a mistrial based on the prosecutor's demonstration to the jury and inflammatory comments. According to Defendant, counsel should have objected when the prosecutor "reenacted" the crime. Defendant also argues that it was improper for the State to argue that he murdered the victim in this case.
>
> Wide latitude is permitted in arguing to a jury. *Breedlove v. State*, 413 So. 2d 1, 8 (Fla. 1982). Here, "the prosecutor [was] merely submitting to a jury a conclusion that he or she [was] arguing [could] be drawn from the evidence." *Davis v. State*, 698 So. 2d 1182, 1190 (Fla. 1997). The State is "allowed to argue reasonable inferences from the evidence and to argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence." *Miller v. State*, 926 So. 2d 1243, 1254-55 (Fla. 2006). Counsel did not err by failing to object to the prosecutor's closing argument. Accordingly, this claim is without merit."
>
> (Doc. 12-8 at 180.)(internal citations omitted).

As discussed above, the prosecutor's remarks were reasonable inferences that could be drawn from the evidence and were not improper. Because the remarks were

not improper, trial counsel did not err by failing to object.  Even if the failure to object

was in error, Petitioner has not shown any prejudice from the prosecutor's remarks.

Accordingly, on this record, Petitioner has not shown that the state court's rejection of

this claim on both the performance and prejudice prongs of *Strickland* was contrary to,

or an unreasonable application of, federal law.

### Ground 7: Counsel was not ineffective for failing to depose state witness Ryan Kitchens.

Petitioner's seventh ground is that his defense counsel was constitutionally

ineffective for failing to depose a state witness, Mr. Ryan Kitchens. Petitioner raised this

claim in his Rule 3.850 motion, but failed to raise this claim in his appeal of his Rule

3.850 motion, which waived this claim before the First District.  *Watson*, 975 So. 2d at

573.  As a result, this claim is unexhausted and procedurally defaulted.

Even if the Court were to review the claim, it would not constitute a basis for

habeas relief.  The state court addressed this claim in Petitioner's Rule 3.850 motion:

> "Prior to and during trial, Kitchens was serving in the Army in Iraq. So, to
> that extent, Kitchens was unavailable to be deposed.  In addition,
> Kitchens testimony was, at worse, neutral to Defendant's case.  Kitchens'
> memory of his conversation with Defendant reflected a relatively subdued
> exchange which did not cause him any concern for the victim's safety.
> Furthermore, Defendant knew what Kitchens would testify to at trial based
> on his statement.  The substance of Kitchens' trial testimony was not a
> surprise.  Because Kitchens was not available to be deposed prior to trial,
> Defendant fails to show that counsel erred by failing to depose him.
> Additionally, Defendant fails to show any prejudice due to the fact that
> Kitchens' testimony was consistent with his statement to law enforcement.
> For these reasons, Defendant's claim is without merit."

(Doc. 12-8 at 183.)(internal citations omitted).

Petitioner has not shown that the state court's rejection of this claim on both the

performance and prejudice prongs of *Strickland* is contrary to, or an unreasonable

application of, federal law.  While Petitioner claims that he finds it hard to believe that the State would spend taxpayer money and resources to transport a citizen whose testimony is "neutral" to the case, Respondent points out that the State may have presented Mr. Kitchens' neutral testimony to avoid the assertion that there is an absent witness that it did not present.  Because Petitioner points to nothing that shows that the state court's determination is unreasonable, this claim is not a basis for federal habeas relief.

To the extent that Petitioner argues that the Confrontation Clause was violated, his claim is also due to be denied.  First, the claim was not raised on direct appeal or postconviction review, and it is now unexhausted and procedurally defaulted.  *Bailey*, 172 F.3d at 1303.  Second, Petitioner's argument is that he did not have the opportunity to cross-examine the creator of the written police statement that was shown to Kitchens at trial through recorded recollection.  The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him."  This clause bars the admission of testimonial statements of a witness who did not appear at trial to be cross-examined.  *Crawford v. Washington*, 541 U.S. 36 (2004).  In this case, the creator of the statement, Ryan Kitchens, was subject to cross-examination by defense counsel.  Furthermore, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."  *Crawford*, 541 U.S. at 59 n. 9.  Kitchens' police statement was not used for the truth of the matter asserted, but as a recorded recollection of Kitchens' statement to the police at the time of the murder.  The proper foundation for the statement was set by the prosecutor's questions to the witness.  Accordingly, any

Confrontation Clause argument made by Petitioner is due to be denied because the claim is unexhausted, procedurally defaulted, and meritless.

***Ground 8: The State did not use perjured testimony of Bruce Van Nostrand in violation of Petitioner's constitutional rights.***

Petitioner next argues that the State used the perjured testimony of Bruce Van Nostrand in violation of his constitutional rights.  Petitioner contends that Van Nostrand was not sure that Petitioner committed the murder. According to Petitioner these reasons include: (1) Van Nostrand's identification of Petitioner at trial was made only after the police photo line up was displayed on screen; (2) Van Nostrand's statement to police was that he was "pretty sure" that the man he saw commit the murder was Denise White's husband; (3) in the photo line up submitted into evidence, the detective wrote that Van Nostrand "believes it's Number 4," which was Petitioner, thus, according to Petitioner, suggests doubt; and (4) Van Nostrand could not properly identify Petitioner's clothes.  Petitioner argues that because Van Nostrand was not sure that Petitioner was the murderer, he committed perjury when he identified Petitioner at trial.

This claim was never presented to the state courts, but rather, in Petitioner's 3.850 motion Petitioner raised a claim of ineffective assistance of counsel, arguing that trial counsel was ineffective for failing to object to the in-court identification of Petitioner by State witness Bruce Van Nostrand. This ineffective assistance claim was denied by the state court. The state court wrote:

> "As to ground (J), Defendant alleges that trial counsel was ineffective for failing to object to the in-court identification of Defendant by State witness Bruce Van Nostrand.  According to Defendant, Van Nostrand was asked to identify Defendant in court *after* he was shown the photo line-up by the prosecutor.  This claim is conclusively refuted by the record.  In fact, the witness identified Defendant in court *prior* to any discussion about the

photo line-up.  Because the in-court identification took place prior to the discussion of the photo line-up, counsel did not err by failing to object on this basis.  Accordingly, this claim is without merit."

(Doc. 12-8 at 183-184.)(internal citations omitted)(emphasis in original).

As a claim that trial counsel was ineffective for failing to object to Van Nostrand's in court identification of Petitioner, the claim is meritless. Petitioner's claim that Van Nostrand identified him after the prosecutor showed him a photo line-up is refuted by the record.  Trial counsel did not err by failing to object and, therefore, on this record, Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of *Strickland.*

Petitioner's freestanding claim that the State used perjured testimony, though procedurally barred, also has no merit.  For perjury to constitute grounds for granting habeas relief, a petitioner must show that certain testimony (1) was used by the state, (2) was false, (3) was known by the state to be false, and (4) was material to the guilt or innocence of the defendant.  *Giglio v. United States*, 405 U.S. 150 (1972).  Petitioner has failed to show that Van Nostrand's testimony was false.  Prior to the trial, Van Nostrand made a positive photo identification of Petitioner and stated to police that he was "pretty sure" the murderer was Denise White's husband because he had met him previously.  For Van Nostrand to subsequently identify Petitioner in court was not inconsistent with his previous statements to police.

**Ground 9: Petitioner's appellate counsel on direct appeal was not constitutionally ineffective for failing to raise two issues.**

Petitioner's ninth ground is that his appellate counsel was constitutionally ineffective for failing to raise two issues on direct appeal: (1) that Petitioner was denied

his substantive due process rights to have counsel and access to the courts and (2) for not arguing the aspect of "under color of office doctrine as it relates to the denial of the suppression of the defendant's statement." (Doc. 2 at 32.)

First, Petitioner's claim is procedurally defaulted.  He filed a petition alleging ineffective assistance of appellate counsel on June 6, 2012. (Doc. 12-10 at 109-166.) The First District denied the petition on June 27, 2012 as untimely pursuant to Fla. R. App. P. § 9.141(d)(5), which requires that a petition alleging ineffective assistance of appellate counsel must be filed within 2 years after the conviction become final (unless petitioner alleges under oath that the petitioner was affirmatively misled about the results of the appeal by counsel).  Fla. R. App. P. § 9.141(d)(5).  Although Petitioner claims that appellate counsel's failure to raise the claims on direct appeal constitutes cause to excuse the default, this is not sufficient.  To show cause, Petitioner has to demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Petitioner has not alleged any external reason for his failure to timely file an ineffective assistance of appellate counsel petition and, therefore, his claim is due to be denied as procedurally barred.

Beyond being procedurally defaulted, Petitioner's claims are without merit.  The first claim Petitioner alleges his appellate counsel should have raised is that Petitioner was denied his substantive due process rights to have counsel and access to the courts.  Petitioner claims that he was arrested on October 28, 2004 but was not seen by a magistrate until November 3, 2004.  He argues that this violates Fla. R. Crim. P. 3.130, which requires that every arrested person be taken before a judicial officer at the

discretion of the court within 24 hours of arrest.  Petitioner states that because of the delay, he was not advised of his charges or rights of redress, the State was allowed to illegally obtain evidence, and he was denied his right to counsel.

Under *Strickland*, a petitioner must show that (1) counsel's performance was constitutionally deficient and (2) he was prejudiced as a result.  Without addressing whether appellate counsel's performance was deficient, Petitioner has not shown that counsel's failure to appeal his delayed initial appearance had a reasonable probability of influencing the outcome of the case.  In light of the overwhelming evidence presented against Petitioner at trial – including the testimony of several eyewitnesses to the murder, DNA evidence, and a taped confession – appealing the issue of Petitioner's delayed initial appearance would not have a reasonable probability of influencing the outcome of the case.  Accordingly, Petitioner is not entitled to relief on this ground.

Petitioner's second claim is that appellate counsel failed to argue the "under color of office doctrine" as support for the invalidity of Petitioner's statement made to police.  The "under color of office" doctrine prevents law enforcement officials from using the powers of their office to observe unlawful activity or gain access to evidence. *State v. Sills*, 852 So. 2d 390, 392 (Fla. 4th DCA 2003).  The record shows that Petitioner was arrested on October 28, 2004 in New Kent County, Virginia, by Officer Teagle, acting in his jurisdiction.  (Doc. 12-3 at 167-168.)  Officer Teagle read Petitioner the *Miranda* rights, took a voluntary statement, collected Petitioner's clothing as evidence, and impounded his car. (Doc. 12-3 at 168, 172, 185-88.)

Detective Barr, an Alachua County police officer, interviewed several of the witnesses at Santa Fe Community College directly after the murder. (Doc. 12-3 at 225.)

Detective Barr entered an arrest warrant for Petitioner later that day. (Doc. 12-3 at 232-33.)  The Sheriff's Office in New Kent County, Virginia, contacted Detective Barr on October 28 and advised that Petitioner was in their custody.  (Doc. 12-3 at 233.) Detective Barr then went to Virginia and interviewed Petitioner after advising Petitioner of his *Miranda* rights and obtaining a waiver.  (Doc. 12-3 at 234.)   Detective Barr photographed Petitioner's vehicle and secured it for transport to Florida. (Doc. 12-3 at 242.)

The "under color of office" doctrine only prevents police from gaining access to evidence by using the powers of their office outside of their jurisdiction.  Police, however, may conduct a lawful investigation outside of their territorial jurisdiction if the subject matter of the investigation originated in their own jurisdiction.  *Goodman v. State*, 399 So.2d 1120 (Fla. 4th DCA 1981); *State v. Chapman*, 376 So.2d 262 (Fla. 3d DCA 1979).  To the extent Petitioner argues that Detective Barr obtained evidence and took a statement from Petitioner outside of his jurisdiction, Detective Barr was permitted to investigate this matter because it originated in his jurisdiction.  As such, this issue has not merit and, therefore, appellate counsel did not err by failing to raise it on appeal. Thus, Petitioner has failed to show either that counsel performed deficiently or that he was prejudiced by appellate counsel's performance.  Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

### Ground 10: The State did not violate Petitioner's due process rights by not proving the aggravating factors of cold, calculated, premeditation as it relates to first degree murder.

Petitioner contends that the State violated his due process rights by not proving the aggravating factor of cold, calculated premeditation.  Petitioner, however, failed to

raise the claim on direct appeal or in postconviction review and, therefore, the claim is unexhausted and procedurally defaulted.  *Bailey*, 172 F.3d at 1303.

In addition to being procedurally defaulted, the claim is not cognizable.  The aggravating factor of cold, calculated, and premeditated manner of homicide is only applicable when determining whether a defendant is facing the death sentence. *See* Fla. Stat. § 921.141(5)(I).  Petitioner did not face a death sentence and, therefore, the state was not required to show the aggravating factor of cold, calculated, and premeditated manner of homicide.  Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

### Ground 11: Petitioner's constitutional rights were not violated because of the cumulative effect of errors.

Finally, Petitioner contends that he is entitled to relief based on cumulative error.  First, Petitioner has not raised this claim in either his direct appeal or postconviction motion and, therefore, it is unexhausted and procedurally defaulted. And Petitioner has failed to demonstrate either cause or prejudice for the default.

Furthermore, with respect to Petitioner's claim of "cumulative error," the Eleventh Circuit has stated "[t]he Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim."  *Forrest v. Fla. Dept. Of Corrections*, 342 Fed. Appx. 560, 564 (11th Cir. 2009)(*per curiam*). The *Forrest* panel further noted "[h]owever, the Supreme Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.'" *Id.* at 564-65

(quoting *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984)); *see also Spears v. Mullin*, 343 F.3d 1215, 1251 (10th Cir. 2003)("Because the sum of various zeroes remains zero, the claimed prejudicial effect of their [the petitioners'] trial attorneys' cumulative errors does not warrant habeas relief.").

As discussed above Petitioner has not demonstrated that any of his trial counsel's alleged errors, considered alone, rose to the level of ineffective assistance. Therefore, there are no errors to accumulate and Petitioner was not denied effective assistance of counsel nor has he demonstrated his trial was fundamentally unfair. *Walls v. McNeil*, No. 3:06-cv-237-MCR, 2009 WL 3187066, at *30-*31 (N.D. Fla. Sept. 30, 2009)("As previously discussed, none of the alleged errors of trial counsel, considered alone, satisfy the threshold standard of ineffective assistance of counsel. Therefore, there are no errors to accumulate. Petitioner was not denied effective assistance of counsel, and he has not demonstrated that his trial was fundamentally unfair.").  Accordingly, Petitioner's eleventh claim for relief based upon cumulative error has no merit.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional

right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, for the foregoing reasons, it is respectfully **RECOMMENDED:**

1. The petition for writ of habeas corpus (Doc. 1) should be **DENIED**.

2.  A certificate of appealability should be **DENIED.**

**IN CHAMBERS**  this 1st day of April 2015.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

 A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.